OPINION
Appellants, Bruce Lawrence, David Lawrence, Matthew Lawrence, and Steven Lawrence, appeal a judgment of the Court of Common Pleas of Marion County, granting summary judgment in favor of Appellee, Paul Timothy Bailey. For the reasons expressed in the following opinion, we affirm in part and reverse in part, the decision of the trial court.
Appellants are the children of Marilyn J. Lawrence ("Marilyn") and Joseph L. Lawrence ("Joe"). Marilyn and Joe were married in 1954 and lived together with their four children on their farm in Marion County, which had been in the Lawrence family for several generations. In the late 1960's, the State of Ohio acquired the farm under its eminent domain power. That same year, at a public auction, Joe purchased another tract of land, which was located approximately one and a half miles from his and Marilyn's original farm. According to the deed, the parcel of land Joe purchased was approximately one hundred four acres. After purchasing the farm, Joe sold a small portion of the farm to Pepsi Cola, Co., leaving approximately ninety-five acres. Joe and Marilyn resided on the farm until 1974 when they were divorced.
Pursuant to the divorce, Joe and Marilyn executed a separation agreement, under the terms of which, Joe transferred legal title of approximately sixty-four acres of the farm to Marilyn by quitclaim deed, and retained approximately thirty-one acres for himself. Thereafter, Joe and Marilyn continued to reside on the adjoining properties as neighbors.
Several years after the divorce, Marilyn became employed as a registered nurse at the Sheriff's office in Marion. In 1979, she became involved in a relationship with Appellee ("Tim"), who was also employed at the Sheriff's office. Marilyn and Tim were married in 1980, and the two lived together on Marilyn's farm with three of Marilyn's children. At the time, Marilyn's son Steven had already moved out of the house. Marilyn continued to maintain an amicable relationship with Joe and, in addition, Tim and Joe became acquaintances. Tim also developed and maintained a good relationship with Appellants, especially Bruce, to whom he became a father figure.
During the time Marilyn and Tim lived on the farm, Marilyn and Bruce owned and operated a livestock business called M.J. Bailey and Sons on a portion of the farm, which operated without profit for many years. In 1980, Marilyn and Tim executed a note and mortgage on the land to Federal Land Bank of Louisville. Marilyn also applied for and purchased a life insurance policy in 1984 from All American Life Insurance Company, naming Tim as the beneficiary.
In 1985, Marilyn became very ill and was subsequently diagnosed with emphysema. By 1996, Marilyn's condition had deteriorated to the point where she was in need of a lung transplant. That year, Marilyn and Tim traveled to St. Louis, Missouri, where Marilyn underwent surgery and received a lung transplant. Prior to leaving Marion, however, Marilyn, Tim, and Appellants met at the farm to have dinner, say goodbye, and discuss the potential disposition of Marilyn's property in the event that she did not survive the surgery.
Following the surgery, Marilyn's health continued to deteriorate, and she subsequently died testate on January 24, 1998. After Marilyn died, her will, which left all of her property, both real and personal, to Tim, was admitted to probate. As a result, the title to the entire farm was transferred to Tim. He was also paid $80,299.26 in full settlement of Marilyn's life insurance policy.
After the property was distributed, Appellants brought an action to recover title to the farm alleging, among other things, that there was an oral agreement between Marilyn and Joe to hold the farm property in trust for the benefit of Appellants. Appellants also allege that Tim understood that it was Marilyn's intention to have the proceeds from the life insurance policy pay off any existing mortgage on the farm property when she died, and for Appellants to receive the farm property. Tim in turn filed a counterclaim against Appellant, Bruce Lawrence, seeking damages in rent for the continued operation of the livestock business on the farm property after Marilyn's death. Tim subsequently moved the trial court for, and was granted summary judgment on all issues. This appeal followed.
Appellants raise the following three assignments of error for our review.
 Assignment of Error No. 1 Where there is substantial and credible evidence from which a trier of fact could conclude the existence of an oral trust, it is error for the trial court to grant summary judgment.
In reviewing the propriety of a summary judgment, an appellate court reviews the issue under the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. It is axiomatic that a trial court is without authority to grant summary judgment unless it can be demonstrated that:
 (1) No genuine issue as to any material fact remains to be litigated: (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United (1977), 50 Ohio St.2d 317, 327; Civ.R. 56(C).
A trust is defined as "the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another." Ulmer v. Fulton (1935), 129 Ohio St. 323, 339. There are two types of trusts, express and implied. Phillips v.Althoff (Aug. 9, 1991), Allen App. No. 1-90-91, unreported. "An express trust arises by reason of a manifested intention to create it. Constructive trusts are imposed irrespective of intention."Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 172. In Ulmer, the Court set forth the elements of an express trust, stating:
 While its elements have been variously stated to constitute an express trust there must be an explicit declaration of trust, or circumstances which show * * * that a trust was intended to be created, accompanied with an intention to create a trust, followed by an actual conveyance or transfer of lawful, definite property or estate or interest, made by a person capable of making a transfer thereof, for a definite term, vesting the legal title presently in a person capable of holding it, to hold as trustee for the benefit of a cestui que trust or purpose to which the trust fund is to be applied; or a retention of title by the owner under circumstances which clearly and unequivocally disclose an intent to hold for the use of another.
Id. at 339-340, quoting 65 Corpus Juris, 231, § 21.
The law in Ohio provides that even under the statute of frauds, express oral trusts in real property may be established by parol evidence. See Matthews v. Leaman (1874), 24 Ohio St. 615;Russell v. Bruer (1901), 64 Ohio St. 1. The Supreme Court has also held that parol evidence may be used to engraft an express trust on an absolute deed, stating:
 1. In order to engraft a trust upon an absolute deed, the declaration of such trust must be contemporaneous with the deed, and the evidence relied upon must be clear, certain and conclusive and must establish the existence of the trust beyond a reasonable doubt. Russell v. Bruer (1901), 64 Ohio St. 1, 59 N.E. 740, followed.
 2. Where a written instrument which is executed concurrently with the execution of an absolute deed, and by the parties to the deed, is later relied upon by the grantor as evidence that the deed is in trust, the conduct of the parties with respect to property so conveyed, over a period of years subsequent to the execution of the deed, is competent evidence as to the intent of the parties with respect to the creation of a trust.
Hill v. Irons (1953), 160 Ohio St. 21, syllabi.
Appellants first argue that the trial court erred in holding that there was no material issue of fact regarding whether an express oral trust was created when Joe Lawrence quitclaimed a parcel of land to Marilyn Bailey pursuant to the terms of their Separation Agreement. In support, Appellants point to Joe Lawrence's deposition testimony, an affidavit executed by him, and the Appellants' own deposition testimony.
In his affidavit, Joe Lawrence stated that prior to transferring the land to Marilyn, he reached an agreement with her that she would hold legal title to the farm, but that it belonged to their children. He also stated that he and Marilyn originally agreed to have the deed to the farm placed in their children's names; however, after speaking with their attorney they decided that it would be too difficult to administer the farm and borrow money against it if they did so. Joe Lawrence also stated in his deposition that there was an agreement between him and Marilyn to hold the farm for their children. In addition, each of the Appellants stated in their depositions that ever since the divorce of their parents, they have been told that the farm would be theirs in the future.
Although we acknowledge the testimony of Joe Lawrence and his children, we also note the absence of any concurrent document purporting to create a trust in the farm property for the benefit of Appellants. On October 21, 1974, both Joe and Marilyn signed a Separation Agreement in which they agreed to apportion their real estate. However, nowhere in the Separation Agreement did they mention or agree to a trust or encumbrance of any kind on the farm property. Following this, on December 10, 1974, Joe transferred 64.45 acres of his land to Marilyn by quitclaim deed. Again, there was no mention in the deed of a trust or any encumbrance placed on the transfer of the land. Finally, we note that on March 21, 1989, Marilyn signed her last Will and Testament in which she devised all of her real and personal property to Appellee. Once again, there is no mention of a trust of any kind with respect to the farm property.
Appellants, however, urge us to consider four handwritten documents drafted by Marilyn, which were found in her home after her death. The documents purport to grant a one fourth interest in the farm property to each of her four children, David, Bruce, Steven and Matthew, and are dated January 9, 1982, January 1, 1983, June 21, 1984, and September 3, 1988, respectively. However, according to the law as expressed in Russell v. Bruer
(1901), 64 Ohio St. 1, and Hill v. Irons (1953), 160 Ohio St. 21, a trust may only be engrafted upon a deed absolute when the declaration of the trust occurs contemporaneously with the deed itself. In this case, these documents were not drafted until well after Joe quit claimed his interest in the land to Marilyn. Furthermore, the documents were not mentioned in Marilyn's Last Will and Testament and, therefore, are not applicable in determining whether an express oral trust was created at the time of the land transfer.
In addition to the facts set forth above, we also note that although Appellants claim the existence of an express oral trust, the record indicates that they met on several occasions after Marilyn's death to discuss purchasing the farm property from Tim. In fact, at one point in time after Marilyn' death, Appellant, Bruce Lawrence, stated that he wished to purchase his portion of the farm from Tim, and even attempted to secure financing to do so. We find these actions to be inconsistent with the other evidence set forth by Appellants above.
Therefore, after examining the evidence before us, pursuant to the standard set forth in Hill v. Irons, (1953), 160 Ohio St. 21, we can only conclude, as did the trial court, that no reasonable mind could find that the evidence put forth by Appellants clearly, certainly and conclusively established the existence of a trust beyond a reasonable doubt. Even though Joe and Marilyn may have had such intentions, they failed in the execution. The self-serving affidavits of Joe Lawrence and his children offered to establish the existence of a trust in this matter utterly fail to raise the issue of fact necessary to establish an express trust.
Accordingly, Appellants' first assignment of error is not well taken and is therefore overruled.
 Assignment of Error No. 2 Where a trustee, constructive or otherwise, fails to comply with the specific terms of a trust, such failure constitutes a breach of fiduciary duty.
 Appellants also claim that the trial court erred in holding that there is no material issue of fact regarding whether a constructive trust should be imposed in favor of Appellants with respect to the farm and the life insurance proceeds. In defining a constructive trust, the Supreme Court of Ohio stated:
 A constructive trust is, in the main, an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud. However, a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud.
Ferguson v. Owens (1984), 9 Ohio St.3d 223, 226.
As support for imposing a constructive trust, Appellants argue that Tim was aware of Marilyn's intentions to leave the farm to her children and have the insurance proceeds used to pay off the mortgage on the farm. We note, however, that Appellants have offered no evidence of fraud or undue influence on behalf of Tim in obtaining either the farm or the insurance proceeds. The evidence before this court is simply insufficient to find that the principles of equity have been abused. This is especially true in light of the fact that neither the insurance contract, nor Marilyn's Last Will and Testament reflect the intentions that Appellants claim.
The simple fact is that Marilyn left all of her property, both real and personal, to Appellee. Generally, absent evidence to the contrary, the express language of the testamentary provisions will serve to indicate the testator's intent. SeeCasey v. Gallagher (1967), 11 Ohio St.2d 42; Solomon v. CentralTrust Company of Northeastern Ohio, N.A. (1992), 63 Ohio St.3d 35. In addition, Tim is the named beneficiary of Marilyn's insurance policy. Generally, absent evidence to the contrary, the named beneficiary of a life insurance policy is legally entitled to the proceeds upon the death of the insured. Ferguson v. Owens (1984),9 Ohio St.3d 223, 226.
We find that the evidence presented to the trial court is insufficient to raise a presumption that a constructive trust should be created in the farm and insurance proceeds for the benefit of Appellants. Because we hold that the evidence is insufficient to create a constructive trust, we hold that Tim had no fiduciary duty to Appellants in this matter. See R.C. § 1339.03.
Accordingly, Appellants' second assignment of error is not well taken and is therefore overruled.
 Assignment of Error No. 3 The trial court had no legal or factual basis on which to grant summary judgment in favor of Appellee on the issue of rent.
In addition to the aforementioned issues, the trial court ruled as a matter of law that Bruce Lawrence is liable for rent in the amount of $400 per month for his continued operation of the livestock business, retroactive to Marilyn's death. However, the record indicates that there is conflicting testimony as to whether Bruce is liable for damages in rent. There is also evidence that the trial court erred in arriving at $400 per month as the damage figure. In support of this error, Bruce points to an affidavit provided by Tim, in which it was stated that the fair market rental value of the property is $125 per month. Additionally, Tim acknowledged in his brief that the trial court erred in calculating damages for rent, claiming that the proper damage amount is $125 per month rather than $400 per month.
Therefore, we find that there is a material issue of fact regarding whether Bruce is liable for rent, and if so, for how much.
Accordingly, Appellants' third assignment of error is well taken and is sustained.
Having found error prejudicial to the Appellants herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed insofar as it relates to the issue of Appellee's counterclaim for damages, and the matter is remanded for further proceedings in accordance with this opinion. The remainder of the judgment is affirmed.
Judgment affirmed in part and Reversed in part and causeRemanded.
SHAW and BRYANT, JJ., concur.